Commonwealth *v.* DeBaldo, Appellant.

Argued April 11, 1951. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Edward M. Citron,* with him *Leo Kostman* and *John R. Bowman,* for appellants.

*Irwin I. Tryon,* for appellees.

OPINION BY DITHRICH, J., July 19, 1951:

Baldwin Township, a township of the first class, pursuant to the Act of June 29, 1923, P. L. 957, 53 PS §15731, its supplements and amendments, adopted a zoning ordinance[1] which provides by section 6 sub-

---

[1] Ordinance No. 255, adopted October 14, 1930, as amended by Ordinance No. 380, adopted September 23, 1942.

section 24 that "mining operations of all kinds, except for water" is a "prohibited use" of land located within a township district designated as "Commercial".

Two informations were filed against each of the appellants charging them with violations of the ordinance "by mining coal in an area prohibited by said ordinance, particularly Section 6 Sub-section 24." One set forth violations occurring on the 26th, 27th, and 28th of February, 1950, while the other set forth violations occurring on the 2nd, 3rd, and 4th of March, 1950. From their conviction before a justice of the peace appeals were taken to the County Court of Allegheny County. After hearing the evidence de novo, LENCHER, P. J., adjudged both defendants guilty of the offenses as charged. Exceptions to his findings of fact and conclusions of law were filed.

After argument before a court en banc, in an opinion disposing of the exceptions the court said: ". . . they [defendants] followed a practice for which we know no legal basis. They filed exceptions and asked leave to argue some legal matters before a court *en banc*." In *Pittsburgh v. Ruffner*, 134 Pa. Superior Ct. 192, 4 A. 2d 224, this Court, speaking through KELLER, P. J., said (p. 197): "It has never been the practice to have such judgment [on appeal from a summary conviction] reviewed by the court in banc before taking an appeal, as in the ordinary trial of civil issues." In that case the appeal was quashed because it was not "taken within the time fixed from the entry of the judgment." In the instant case the appeal to this Court was timely and will be considered on the merits.

Appellants contend that since the arresting officer testified that removals of coal took place on March 3, 4, and 5, a violation on March 2 was not proved, and therefore the informations charging violations occurring on March 2, 3 and 4 were void. They further contend that since each of the informations set forth three

violations, each day of alleged mining operations constituting a single offense, they are invalid because of duplicity. The technical accuracy necessary to an indictment is not essential to an information. *Commonwealth v. Beloff*, 166 Pa. Superior Ct. 286, 70 A. 2d 689; *Commonwealth v. Spallone (No. 1)*, 154 Pa. Superior Ct. 282, 35 A. 2d 727; *Commonwealth v. Ginsberg*, 143 Pa. Superior Ct. 317, 18 A. 2d 121. With particular regard to the first contention, it should also be noted that appellants admittedly removed coal over a two or three week period, which, under the facts, would include March 2.

With respect to the second contention the following language is apposite: "In general, a justice of the peace or similar officer may properly try a case in which charges for separate offenses or violations of statutes are united in the same complaint or accusation, at least where the offenses are all of the same general nature, and each, taken separately, is within the limits of his jurisdiction": 22 C.J.S., Criminal Law, §376. In *Commonwealth v. Tryman*, 62 Pa. Superior Ct. 241, this Court held that the rule as to joinder of separate offenses in one complaint rests on a technicality which will not stand in the way when the interest of the defendant is not jeopardized. Here, the six offenses charged were of the same nature to which the same defenses were available. No harm to defendants arose out of the manner of their joinder in the informations.

Appellants do not deny that they removed coal from land within an area where mining operations were prohibited.[2] It is argued, however, that such removals

---

[2] Whether the coal was removed from a "Residence" or "Commercial" district is not clear. Since mining operations would be unlawful in either district, the fact is immaterial. However, the informations stipulated violations of section 6 subsection 24 of the ordinance. We, therefore, have disposed of the cases as if the violations occurred in a "Commercial" district.

were not "mining operations" prohibited by the ordinance. Rather, it is urged, the removals were merely incidental to reclaiming the land involved in preparation for housing development. But the trial judge as a matter of fact found otherwise. He found that "The evidence as to any building venture is most fragmentary. The township has regulations concerning specific plans and preliminary steps which neither of these defendants even pretends to have met. Neither ever submitted any plan specifically indicating a building venture. No plan of dedicated streets was ever submitted by either defendant. Aside from a general plan of their land drawn for the defendants by the township engineer, there is no evidence in any way specifying or detailing a plan or project for the building of a house or houses. Instead at various meetings with the township commissioners, neither defendant ever specified the exact location of a proposed building project. What is more to the point, the . . . evidence before us, especially pictures of the coal mining operations, clearly indicate coal mining so deep, expansive and widespread as to make impossible acceptance of the defense that the defendants mined coal only as preliminary to clearing land for a building venture."

A careful review of the record discloses ample evidence of a substantial and competent nature to support that finding, and therefore it is binding upon us. We are convinced that the justification offered was merely a subterfuge designed to circumvent the plain meaning of the ordinance.

The final argument advanced by appellants is that "the enforcement of this provision [is] unreasonable and confiscatory, therefore invalidating said provision, where the facts show that the removal of the coal is necessary to the use and building development of the land." These being appeals from summary convictions and not from a decision of a board of adjustment, the

argument must be disregarded. "All questions involved in zoning ordinances, whether they relate to confiscation of property or to the effect of any of the provisions of an ordinance, must be heard and considered under the remedy provided by the Zoning Acts of assembly": *Taylor v. Moore,* 303 Pa. 469, 476, 154 A. 799. This is required by the Act of March 21, 1806, P. L. 558, 4 Sm. L. 326, §13, 46 PS §156, which provides: "In all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law, in such cases, further than shall be necessary for carrying such act or acts into effect."

The Act of June 24, 1931, P. L. 1206, Article XXXI, §3107, as amended 1949, May 27, P. L. 1955, §59, 53 PS §19092—3107, providing for the creation of a board of adjustment with the power, inter alia, to grant variances in certain cases, and allowing appeals to the common pleas court, rendered it necessary for appellants to test their rights by proceeding through that board. Cf. *Geisinger's Appeal,* 35 Del. 333. Only on an appeal from its decision can the constitutionality of the ordinance, as it affects the particular situation of the appellants, be properly tested.

Judgments affirmed.