## Fox v. Warrington Township Zoning Board

2

*Bunting & Satterthwaite*, for plaintiff.
*Lee B. Lansberry*, for defendant.

SATTERTHWAITE, J., February 25, 1955.—In this zoning case, the question of jurisdiction was raised at the hearing and the trial judge directed that that subject be argued before the court en banc prior to further proceedings upon the merits. After such argument and upon consideration of the authorities involved, we are of the opinion that the zoning board of adjustment had no jurisdiction. Accordingly, the entire proceedings before the board are void and should be dismissed, without prejudice or decision on the merits of the controversy.

Appellant, Max Fox, with his wife, are the owners of premises in Warrington Township, this county, upon which he is presently, and has been for some time past, conducting a so-called "mink farm" for the breeding and raising of mink for purposes of commercial sale. Such use of the property is not a permissible one under the appropriate provisions of the Warrington Township Zoning Ordinance of 1952. However, to some extent at least, appellant was conducting this operation on the premises prior to the effective date of the zoning ordinance, and section 803(1) thereof contains the usual provision authorizing the continuance of lawful, preëxisting, nonconforming uses.

On July 16, 1954, the Warrington Township zoning officer advised appellant by registered mail that the keeping and raising of mink on his property was a violation of the zoning ordinance and that a grace period of 30 days would be allowed in order that he might cure the violation, after the expiration of which "it will be necessary for me to invoke the penalties as pro-

vided in the ordinance of fines up to $25.00 for each offense with each day's continuance of such offense to be a separate and distinct violation and offense."

The notice further assumed to advise appellant of his right to "appeal any decision of the zoning officer to the zoning board of adjustment" within 30 days.

Appellant, without the advice of counsel, signed an application form the next day for an "appeal" to the board from the alleged "decision" of the zoning officer, and in due course the board held a public hearing after which, on August 19, 1954, it entered the following order:

"1. That the said Max Fox is hereby restricted to the use of the area within the original wire fence topped with the wide metal band as shown as exhibit #2 as a nonconforming use".

2. That the said Max Fox is directed to comply with this order of restriction on or before September 30, 1954, unless the use area is further extended through the procedure prescribed in sec. 1001 and sec. 803, par. 2 of the Warrington Township Zoning Ordinance as amended".

(Section 1001 of the ordinance imposes the requirement of a permit prior to the use or change in use of a building or land, and prior to the change or extension of a nonconforming use. Section 803(2) relates to and authorizes extensions of nonconforming uses, subject to certain limitations.)

The jurisdictional problem arises by reason of the fact that no "decision" of the zoning officer has ever been made in this case and hence there was nothing from which appellant could appeal to the board, and the latter therefore had nothing before it upon which to act.

Section 2007 of the Second Class Township Code, as revised and recodified by the Act of July 10, 1947, P. L. 1481, as amended, 53 PS §19093-2007, provides,

with respect to the powers of a board of adjustment, as follows:

"The board of adjustment shall have the following powers:

"(1) To hear and decide *appeals* where it is alleged there is error *in any order, requirement, decision or determination made by the zoning officer* in the enforcement of this article or of any ordinance adopted pursuant thereto.

"(2) To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance.

"(3) To authorize, *upon appeal,* in specific cases such variance from the terms of the ordinance as will not be contrary to public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done". (Italics supplied)

Substantially identical provisions are contained in section 1101 of the Warrington Township Zoning Ordinance of 1952.

Under such statutory language, the Supreme Court has held that, except for cases involving special exceptions provided for in the ordinance itself, the board has no original jurisdiction and can act only where the case comes up on appeal from an administrative decision; the statute, being in derogation of long-established property rights, must be strictly construed and followed: Lukens v. Ridley Township Zoning Board of Adjustment, 367 Pa. 608. Accordingly, unless the letter of July 16, 1954, from the zoning officer was an "order, requirement, decision or determination", there was no legal basis for the "appeal" and the board had no right to act thereon.

We do not believe that this communication was in any legal sense the kind of judicial or quasi-judicial act

contemplated by the statute. It purported, of course, by reason of the language chosen by the writer, to be literally an order and requirement, as well as a possible expression of his own preconceived decision and determination of appellant's guilt of violation of the ordinance, but as such it had no authoritative or dispositive legal effect for the simple reason that the zoning officer had no more authority to make such an order or render such a decision than any other private citizen of the township. His status, so far as the present situation is concerned, was that of an enforcement officer under section 1000 of the ordinance; it was that of a prosecutor or partisan representative of the municipality in initiating appropriate action toward the effective enforcement and operation of the zoning regulations of the township. It was not for him to judge the case. Notwithstanding that he undertook to arrogate such power, he personally had no legal authority to impose any fine or penalty upon appellant for violation of the ordinance; such result could follow only *on conviction* in appropriate summary proceedings before a justice of the peace, as provided in section 1301 thereof.

In fact, section 1301, relating to penalties, clearly points up the only real purpose of the letter; it requires as a condition precedent to summary proceedings for enforcement by fine or penalty that: "The zoning officer shall give official written notice to the violator, by registered mail, that he is committing a violation". Such purpose also appears from the very language of the letter itself which commences: "This is intended to *officially notify you* . . . ." (Italics supplied.) In short, it is apparent that the writing was legally nothing more than a formal notice, the import and connotation of which are totally foreign, separate and distinct from the concept and meaning of the statutory words, "order, requirement, decision or deter-

mination". The latter phraseology, it seems to us, should be construed to apply only to quasi-judicial actions of the zoning officer, such as his grant or refusal of permits under the appropriate provisions of the ordinance which entrust such functions to him.

We have neither found nor been referred to any Pennsylvania decision ruling the precise question here presented, a situation which in itself is of some significance against the procedure herein adopted. In Duquesne Light Company v. Upper St. Clair Township, 377 Pa. 323, the controversy was precipitated by a notice from the township zoning officer of intended prosecution of the utility company for violation of zoning regulations in the construction of transmission line towers without a permit. However, the merits of the case were litigated in an action in equity by the light company seeking to enjoin the enforcement of the ordinance, the complaint having been filed about three months after such notice, and without any appeal having been taken therefrom. The Supreme Court upheld the jurisdiction of the court of equity notwithstanding the contention that the remedies provided by the zoning laws were exclusive, holding without spelling out what they were that such remedies would be inadequate and too time consuming in view of the exigencies of the case. So also, in Keller et ux. v. Lyman et al., 66 D. & C. 591, declaratory judgment proceedings were instituted by the property owner involved after he had been notified by the administrative official to cease and desist an alleged violation of a borough zoning ordinance; the case was decided on the merits without reference to the problem of whether he could or should have appealed to the board of adjustment.

Notwithstanding that there is no exact precedent for the situation presently involved, we believe that Grabosky v. McLaughlin et al, 36 D. & C. 215, was a closely

analogous decision and indicates the proper basis upon which the instant question should be decided. In that case Common Pleas Court No. 7 of Philadelphia County had for consideration an appeal from the "action" of the Philadelphia Zoning Board of Adjustment after that board, on application of the owner of the premises in question, had recommended to city council an amendment reclassifying the area under the zoning ordinance. Such recommendation was authorized by the Philadelphia ordinance. Judge Sloane dismissed the appeal on the ground that it was not taken from any "decision" within the meaning of section 8 of the Act of May 6, 1929, P. L. 1551, 53 PS §3829, authorizing appeals to the courts by "any person or persons jointly or severally aggrieved by any *decision* of the board of adjustment . . . " . The rationale of the case, which is equally applicable to the instant proceedings, is explained in the following quotation appearing at pages 218-19:

"It is petitioner's contention, however, that the board of adjustment has made a decision, that she has been aggrieved by that decision, and that therefore her appeal falls within the wording of that portion of section 8 of the Act of 1929, supra, which provides for an appeal.

"Has the board decided, in an appealable sense? We do not think so.

"The board of adjustment is vested with various types of authority under the statutes and ordinances relating to it. Some of its acts are administrative, some legislative, and some quasi-judicial. Strictly speaking, every time the board decides upon a course of action with respect to any of its functions it has made a 'decision'. And yet we do not think that it would be seriously contended that all of these decisions would be appealable to the courts under the language of section 8. It seems clear that, in order to be appealable,

a decision must be one which possesses a certain degree of finality and which operates directly to affect the rights of property owners."

Counsel argued, however, that if the board did not have jurisdiction in this case, appellant never will have the opportunity to present his defense of nonconforming use in any summary proceedings brought against him for alleged violations, citing Commonwealth v. DeBaldo, 169 Pa. Superior Ct. 363. In this, we believe such fears are unfounded. While that decision certainly cannot be disregarded and is binding upon us on its facts whether or not we agree with the broadly stated principles therein enunciated (compare Miller Appeal, 80 D. & C. 370), nevertheless we cannot believe that the implications thereof would necessarily be carried to the extremes now urged.

In the DeBaldo case, defendants were convicted in summary proceedings of violating a zoning ordinance in conducting a coal mining operation in a residential district. Apparently they had never applied to the zoning authorities for any type of permit nor requested a variance from the zoning requirements, but blatantly proceeded with their unauthorized enterprise in total disregard of the ordinance. Notwithstanding they had not complied with the township's regulations concerning preliminary approval of plans relating to building sites, on appeal to the county court they contended that they were not, in fact, mining coal, but were merely clearing and grading their premises in preparation for development thereof as housing projects, and if the ordinance prohibited such activity, it was unreasonable and unconstitutional. The county court in its decision, reported in 99 Pitts. L. J. 155, found against defendants on the factual basis for their contentions, holding that the size and depth of the excavations were totally inconsistent with mere grading purposes, and upheld the conviction. The Superior Court af-

firmed, holding the evidence sufficient to justify the findings of fact, and agreeing with the conclusion that the justification offered was merely a subterfuge designed to circumvent the plain meaning of the ordinance. The opinion concluded with a curt dismissal of defendants' contention that the ordinance was unreasonable and unconstitutional as to their alleged building operations, by stating, at pages 367-68:

"These being appeals from summary convictions and not from a decision of a board of adjustment, the argument must be disregarded. 'All questions involved in zoning ordinances, whether they relate to confiscation of property or to the effect of any of the provisions of an ordinance, must be heard and considered under the remedy provided by the Zoning Acts of assembly': *Taylor v. Moore*, 303 Pa. 469, 476, 154 A. 799. This is required by the Act of March 21, 1806, P. L. 558, 4 Sm. L. 326, §13, 46 PS §156 . . .

" . . . (Legislation) . . . providing for the creation of a board of adjustment with the power, inter alia, to grant variances in certain cases, and allowing appeals to the common pleas court, rendered it necessary for appellants to test their right by proceeding through that board. Cf. *Geisinger's Appeal*, 35 Del. 333. Only on an appeal from its decision can the constitutionality of the ordinance, as it affects the particular situation of the appellants, be properly tested."

We do not believe that the all-embracing language so quoted from Taylor v. Moore would literally, necessarily and inevitably govern *all* questions involved in or arising under zoning ordinances. Neither the Supreme Court nor the Superior Court has followed the rule so arbitrarily or strictly. Undoubtedly, such general principle asserting the exclusivenes of the remedies and procedures provided by the zoning laws is well established, having been enunciated in Taylor v. Moore, supra, and followed in subsequent cases where such

remedy was available and adequate. See, for example, White et al. v. Old York Road Country Club et al., 318 Pa. 346; Wojner et ux. v. Yale and Towne Manufacturing Company, Inc., et al., 348 Pa. 595; Young et al. v. Board of Adjustment of Wilkinsburg Borough et al., 349 Pa. 450; Phillips v. Griffiths, 366 Pa. 468; Castle Shannon Coal Corporation v. Upper St. Clair Township, 370 Pa. 211; Wyszynski v. Philadelphia, 370 Pa. 632; Oteri Appeal, 372 Pa. 557; Shender v. Philadelphia, 375 Pa. 596; Vogt v. Port Vue Borough, 170 Pa. Superior Ct. 526. Yet it is equally well established that this concept has no application where the remedy provided by the zoning statutes is not available or appropriate (White v. Old York Road Country Club, supra; see Young v. Board of Adjustment of Wilkinsburg Borough, supra, at page 452), or is inadequate to protect property rights or prevent irreparable interim damages (Wood v. Goldvarg, 365 Pa. 92; Duquesne Light Company v. Upper St. Clair Township, 377 Pa. 323), or is accompanied by another equally available statutory remedy, e.g., provisions of the First Class Township Code authorizing complaint, at least as to matters of formal enactment, against the legality of any township ordinance, including zoning ordinances: Wynnewood Civic Association v. Lower Merion Township, 175 Pa. Superior Ct. 20.

The broad sweep of the language used in the De-Baldo case, therefore, must be considered in light of the factual basis for the decision, and should be considered as applying the exclusiveness doctrine so as to refuse to hear questions in a collateral proceeding which appropriately should have been heard and decided in the zoning forum, qualified, however, by the implicit understanding, as expressed in the other cases mentioned, that the remedy under the zoning laws was or could have been available, adequate, and not otherwise provided for by statute. Defendants in the

DeBaldo case could very readily have raised the constitutional question upon which they attempted to rely merely by applying for use permits and appealing from the refusal thereof. On the facts as found, there could be no question but that their uses were contrary to the literal provisions of the ordinance. Hence, the conclusion was inescapable that they were merely defying the township law without any color of protection by an order, entered in appropriate proceedings, determining its invalidity as applied to them. From that, however, it is a far cry to reason that the doctrine of exclusiveness would therefore necessarily apply to a case in which, although a zoning ordinance was involved, no provision was made for a permit application (as, for example, in the Warrington Township Ordinance under which no permission is required for the continuance of a lawful, preëxisting, nonconforming use), or in which factual questions have arisen as to the nature of the particular use involved and the actual application of the language of the ordinance itself thereto. Under such situations, we very much doubt that the Superior Court would mechanically apply the broad general principles stated in the DeBaldo case.

Moreover, as shown by the last sentence of the DeBaldo opinion quoted above, that decision actually purports to hold only that *constitutional* questions cannot be considered in summary proceedings to enforce a zoning ordinance: Miller Appeal, 80 D. & C. 370. It does not totally preclude an appeal from a summary conviction in such cases or render unavailable *all* possible defenses which might be made therein, as counsel would seem to interpret it. It is not inconsistent, on that basis, with such decisions as Commonwealth, Borough of Bellevue, v. Reed, 165 Pa. Superior Ct. 114, where, on appeal from a summary conviction for violation of a zoning ordinance, the whole tenor

of the opinion indicates that a lawful, nonconforming use (which factually therein was not made out) would have been a complete defense even though raised in such a collateral preceeding. The exclusiveness-of-remedy doctrine was not even mentioned.

From still another and possibly a less technical and more practical point of view, we believe that it would be a dangerous precedent to hold that a mere cease and desist order of an administrative officer amounted to an appealable decision. If that be the law, then such an appeal would be constituted an appropriate remedy under the zoning legislation and, by virtue of the very decisions declaring the exclusive-remedy doctrine discussed above, would become compulsory in every such case under penalty of forfeiture of matters of defense in subsequent collateral enforcement proceedings. Thus, a property owner would be bound at his peril to take affirmative action upon receipt of any such unverified notice, no matter how informal or irresponsible might be the form and content thereof as prepared by some officious or intermeddling ministerial officer. The ordinary layman would have no knowledge of the necessity for appeal therefrom, unless, as in the instant case, the notice happened also to include as a matter of grace a caution so advising. The chaos and injustices that would inevitably result from such an interpretation are clearly so repugnant to recognized concepts of fairness and equity as to preclude such a result in the absence of the most compelling precedent or legislative mandate.

The dismissal of the within proceedings, accordingly, would seem to leave appellant with full opportunity to seek and obtain legal protection for his claimed rights, the language of the DeBaldo case notwithstanding. If he has a valid nonconforming use and no question of change or extension thereof is involved, he need do nothing since section 803(1) of the

ordinance expressly authorizes such continuance and no permit therefor is required by section 1001. If the existence of such use prior to the effective date of the ordinance be questioned, as by summary proceedings or an action in equity against him, it is inconceivable that he would be precluded, by the DeBaldo case or by any other decision, from establishing the factual basis thereof as a defense thereto. On the other hand, if, as appears to be the fact, he has attempted to extend or change his nonconforming use since the effective date of the ordinance, he would be subject to the provisions of section 803 (2) or (3) and, under section 1001, should have obtained a permit therefor. Accordingly, if that be the actual situation, he would have been subject to the penalty provisions for such past violations were it not for the instant appeal, and will again be subject thereto after appropriate notice, unless he applies for and obtains a permit authorizing such change or extension. Any interested party aggrieved by the action of the zoning officer in granting or refusing such permit would thereupon have a proper basis for appeal, first to the board of adjustment, and ultimately to this court. The information contained in the application for such permit would then provide a more intelligible and precise basis for the definition of the exact issues involved, thus rendering more certain the basis and manner of consideration of the controversy presented. That certainly cannot be said of the present record.

### Order

And now, February 25, 1955, for the reasons stated in the foregoing opinion, the entire proceedings before the board of adjustment in the within case are declared to be void and of no effect for lack of jurisdiction in the board to hear the same. Such proceedings are hereby dismissed without prejudice or decision on the merits of the controversy therein presented.