**Borough of Ellport v. Stewart**

*Gerald E. Crowley,* for plaintiff.
*George O. Sewall,* for defendant.

## ADJUDICATION

HENDERSON, P. J., December 26, 1968.—

### FINDINGS OF FACT

1. Ellport Borough Ordinance No. 39 is a duly enacted ordinance of the Borough of Ellport, Lawrence County, Pa.

2. Defendant owns certain real estate in the Borough of Ellport, Lawrence County, Pa., known and described as all of lot no. 7 in the Albert Deemer Plan of Lots situate on the north side of the Ellwood City-Portersville State Road, fronting 72.6 feet thereon and extending therefrom northwardly of even width a distance of 150 feet to the south line of Sixth Street in the Borough of Ellport.

3. The area in question along State Road east of Golf Avenue in the Borough of Ellport, Lawrence County, Pa., had been commercial prior to September 19, 1967. The area west of Golf Avenue along State Road is used primarily as a business area.

4. During August of 1967, defendant was present at a meeting of the Council of the Borough of Ellport and advised council that he desired to operate a coin-operated laundromat in the building located on his property and further that he desired to construct an addition to that building, it also to be used in the business.

5. Defendant never, either personally or through his agent, Ira P. West, filed an application for a building permit nor did he comply with the ordinance procedures required for the issuance of a building permit.

6. On September 19, 1967, the Ellport Borough Council passed a resolution directing the borough secretary to issue a building permit for the new construction to defendant.

7. On September 21, 1967, the borough secretary refused to issue a building permit to defendant. No such permit has ever been issued.

8. On September 23, 1967, defendant was informed by his agent, Mr. West, that the borough secretary had refused to issue the building permit.

9. Council of the Borough of Ellport never formally rescinded its action authorizing the issuance of a building permit to defendant.

10. The Council of the Borough of Ellport has never appointed a board of adjustment.

11. Council of the Borough of Ellport acts as a board of adjustment when decisions by a board of adjustment are necessary.

12. On October 3, 1967, a number of citizens of the Borough of Ellport appeared at a meeting of the borough council to object to the installation and operation of a laundromat at defendant's location.

13. On November 30, 1967, Ellport Borough Council held a public hearing at which proposed amendments to the borough zoning ordinance were discussed.

14. On the date of hearing, there was situate on defendant's premises a building which contained 16 coin-operated washing machines and seven coin-operated driers.

15. On December 5, 1967, Ellport Borough Council amended ordinance no. 39 by enactment of

ordinance no. 122, which changed the zoning in the area in question to "A Residential."

16. During December of 1967, and thereafter, defendant constructed a certain foundation on this property upon which he later moved a portable type building converted for use with the building previously there.

17. On January 2, 1968, Ellport Borough Council directed its solicitor to commence legal action against defendant for violation of ordinance no. 39.

## DISCUSSION

This is an equity matter in which the Borough of Ellport, Lawrence County, Pa., has petitioned the court to enjoin defendant from erecting a building addition without first obtaining a building permit, and that defendant be enjoined from using his building for purposes alleged to be contrary to the provisions of the zoning ordinance.

A copy of the zoning ordinance for the borough has been attached to the complaint filed in this matter and has been reviewed in detail by the court. The zoning ordinance became effective August 20, 1946. That ordinance was amended on January 20, 1947, on May 1, 1962, on May 4, 1965, and amended again on December 5, 1967.

The zoning ordinance, as amended, incorporated the standard type zoning ordinance provisions, including provisions governing procedures for persons who feel themselves to be aggrieved by any action taken under the ordinance. The constitutionality of this ordinance is not questioned.

In this case, defendant owned a certain property in the petitioning borough, on which property he desired to establish a laundromat where he would make available to the public a number of coin-operated washing machines and driers.

According to the record, defendant appeared before the borough council on August 1, 1967, and advised the borough of this intention. At a meeting of the borough council held on September 19, 1967, a resolution was passed directing the borough secretary to issue a building permit to defendant permitting the requested addition. However, the borough secretary refused to issue such a building permit on the ground that defendant had not complied with the provisions of the ordinance, and no building permit has ever been issued. On October 3, 1967, a number of the residents of the borough objected to the installation and operation of a laundromat, as a result of which the borough council held a public hearing on November 30, 1967, to consider an amendment to the borough zoning ordinance prohibiting such an operation. Such an amendment was enacted on December 5, 1967.

Prior to the public hearing on November 30, 1967, defendant had installed 16 coin-operated washing machines, as well as seven coin-operated driers, in a building located upon this premises. During December of 1967, defendant began construction of an addition to this building to enlarge the operation, even though no building permit had been issued. This suit was commenced shortly thereafter.

We hold that the operation of a laundromat business, including the making available to the public of coin-operated washers and driers, was a permitted activity under the zoning provisions in effect on the land in question prior to the amendment to the zoning ordinance of December 5, 1967.

Defendant now takes the position that the issuance of the permit in accordance with the borough council resolution was a purely ministerial function and that, therefore, the borough secretary had no discretion as to whether or not it should be issued. Defend-

ant would, therefore, have us conclude that he was entitled to begin the new construction just as though a valid building permit had been issued to him. This is not so for two reasons.

In the first place, no one is entitled to begin construction without a valid permit. If the landowner is aggrieved by the refusal of the borough secretary to act in a purely ministerial function and properly issue a permit, the landowner's redress lies in a mandamus action to direct the secretary to issue the permit. As the court said in Baldwin Borough v. Matthews, 394 Pa. 53, 145 A.2d 698 (1958), quoting from Coyne v. Prichard, 272 Pa. 424, 427, 116 Atl. 315 (1922):

" '. . . the obligation to grant the leave to build is absolute, where the prerequisite conditions have been fulfilled. The duty of the officials placed in charge thereafter is merely ministerial.' [Case cited]. The action of the building inspector was therefore arbitrary, capricious and unwarranted. Such being the case, the applicants did not even need to resort to an appeal to the board of adjustment for correction of the inspector's action. In the existing circumstances mandamus was both the appropriate and efficient remedy."

See also Dooling's Windy Hill, Inc. v. Springfield Township Zoning Board of Adjustment, 371 Pa. 290, 89 A.2d 505 (1952).

We have found in this case that none of the prerequisite conditions for the issuance of a building permit had been complied with by the landowner so as to reduce the position of the borough secretary to that of acting in a purely ministerial function. Even if that were the case and the secretary refused to issue the permit, defendant's obligation then would be to force the issuance by mandamus rather than to begin construction without the permit.

Secondly, defendant's position cannot be sustained by reason of the fact that if the council resolution were to be considered equivalent to the issuing of a building permit, the same would have been issued illegally and contrary to the requirements of the law. It is basic in the law that grounds for granting a building permit must be consistent with the standards prescribed by statute and by ordinance (Archbishop O'Hara's Appeal, 389 Pa. 35, 131 A.2d 587 (1957) ); and, further, such a permit issued illegally or in violation of the law or under a mistake of fact should be revoked even if there were no express grant of power of revocation given by statute or ordinance: Ventresca v. Exley, 358 Pa. 98 (1948).

If the administering agency of the municipality is under a duty to revoke an improperly issued building permit, how, then, can defendant be heard to say that the resolution of the borough council in this case, where no building permit was ever issued, can be held to be binding on all parties and irrevocable?

Defendant had expended certain funds after the resolution of the borough council was passed, even though he or his agent had been advised that no building permit would be issued and even though he knew that the zoning ordinance was amended so as to prohibit an extension of his activity in this location. He now takes the position that such expenditure of funds following the borough council resolution confers certain vested rights upon him and that the borough cannot now object to his construction and operation. There are numerous cases holding that zoning confers no vested rights upon anyone and that zoning ordinances may be changed from time to time provided, however, "that if a building permit has been issued and the holder thereof has in good faith expended substantial funds relying upon said permit, then the legislative body may not change the zoning

law": Hood v. Upper Dublin Township Zoning Board, 13 D. & C. 2d 596, 73 Montg. 338 (1957). Since no permit was ever issued in this case, there could not have been such reliance on it.

In Silverco, Inc. v. Zoning Board of Adjustment, 379 Pa. 497, 109 A.2d 147 (1954), the court held that the issuance of a permit pursuant to administrative decision or an ordinance does not, of itself, prohibit the borough from later contesting such issuance, if there is a question as to whether such permit was properly and legally issued, and it further held that a property owner's investment of funds in reliance upon such a permit does not prevent the municipality from revoking the permit.

The hornbook law is found in 26 P.L. Encyc. 72 and 26 P. L. Encyc. 109, which states that if a building permit has been properly issued and if the holder thereof in good faith expends substantial funds relying on the permit, then he does acquire property rights in the matter, and the legislative body may not change the law in such a manner as to work a revocation of the permit. Certainly, this does not apply to the situation where a permit is never issued. Such expenditure of funds is made at the owner's peril. See Vogt v. Port Vue Borough, 170 Pa. Superior Ct. 526 (1952); Valicenti Appeal, 298 Pa. 276, 148 Atl. 308 (1929); Ventresca v. Exley, supra. See also Penn Township v. Yecko Bros., 420 Pa. 386, 217 A.2d 171 (1966), and Penn Township v. Fratto, 430 Pa. 487, 244 A.2d 39 (1968).

With reference to the original structure on the premises and the operation of the laundromat business in that structure prior to the addition to the building, we find that the operation conformed to the ordinance requirements before the latest amendment but is no longer in conformity therewith. Until such time as he follows the proper ordinance procedures

to obtain a permit to operate in the original building as a nonconforming use, he has no standing in the courts.

" 'All questions involved in zoning ordinances, whether they relate to confiscation of property or to the effect of any of the provisions of an ordinance, must be heard and considered under the remedy provided by the Zoning Acts of assembly' ": Commonwealth v. DeBaldo, 169 Pa. Superior Ct. 363, 368, 82 A.2d 578 (1951).

We shall, therefore, enjoin any further operation of this business in that portion of the building which he added to the original building without a building permit and direct that the new portion of the building be dismantled.

We shall further direct that defendant follow the ordinance procedures in making an application to the board of adjustment, or to the borough council acting as the board of adjustment, for proper authorization to operate this business in the original building under the nonconforming use provisions of the ordinance.

### CONCLUSIONS OF LAW

1. The type laundromat contemplated by defendant and presently in operation complies with the zoning restrictions on this property as they were in effect prior to December 5, 1967. However, such use is not permitted under the amendment of that date.

2. No new construction such as is involved in this case is permitted without a building permit being issued therefor.

3. A resolution of the borough council is not the equivalent of a building permit as required by the zoning ordinance.

4. The borough council resolution directing the issuance of a building permit conferred no vested right or privilege upon the property owner and any change

of position by the property owner or investment of substantial funds by the property owner in reliance thereupon was made at the owner's peril.

5. The procedures prescribed by the borough zoning ordinance set forth the exclusive remedy available to anyone aggrieved by the decision of the zoning officer or borough secretary.

### ORDER OF COURT

Now, December 26, 1968, it is hereby ordered that A. Harvey Stewart, as well as any person claiming under or through him, is hereby enjoined from permitting the building addition which he constructed after September 19, 1967, on his property, known as lot no. 7 in the Albert Deemer Plan of Lots situate in the Borough of Ellport, Lawrence County, Pa., to remain upon the said property and is held responsible for the immediate removal thereof.

It is further ordered that unless the said A. Harvey Stewart institutes the necessary procedures for approval of a nonconforming use operation in that portion of the building which was on the property in question on September 19, 1967, within 30 days from the date hereof, then he, and any person acting under or through him, is hereby enjoined from continuing a laudromat operation upon his premises.

### OPINION SUR EXCEPTIONS

HENDERSON, P. J., December 26, 1969.—The matter presently before the court en banc deals with exceptions filed by each party herein to a decree nisi previously filed by the court.

Plaintiff's first exception and defendant's ninth exception will each be affirmed and wording changes made to conform the finding of fact and the conclusion of law with the testimony. Defendant's exception 10(b) will also be affirmed. This concerns the second paragraph of the prior decree nisi which required de-

fendant to take affirmative action under the zoning ordinance to continue a nonconforming use.

We have reviewed the zoning ordinance, particularly articles V, 2(b) and 2(c); VII, 1(c) and VIII 2(a), and the testimony, and conclude that no such affirmative action, as ordered in the prior decree, is required under the ordinance.

There were no such substantial structural alterations or changes made in the previously existing building on this property as to require affirmative action by the property owner under the ordinance. The only changes made in the structure, as it existed on the premises prior to the critical date, were the addition of one window and one door and the replacement of a garage door with one window. All other changes were internal changes, such as plumbing and wiring.

We hold that the work done on the prior existing structure was not such as to affect a vital and substantial portion of the structure, did not change its characteristic appearance or the fundamental purpose of the structure, and that such changes were not extraordinary in scope and effect or unusual in expenditure: Hanna v. Board of Adjustment, 408 Pa. 306, 183 A. 2d 539 (1962).

We shall, therefore, hold that defendant need institute no procedures for approval of a nonconforming use as to that portion of the building.

Each of the balance of the exceptions filed will be refused.

## ORDER OF COURT

Now, December 26, 1969, plaintiff's first exception to the decree nisi, dated December 26, 1968, is affirmed, and the third finding of fact is hereby amended to read as follows:

"3. The area in question along State Road East of Golf Avenue in the Borough of Ellport, Lawrence County, Pennsylvania, had been zoned commercial

prior to September 19, 1967. The area west of Golf Avenue along State Road is used primarily as a business area."

Defendant's ninth exception to the decree nisi, dated December 26, 1968, is affirmed, and the first conclusion of law is hereby amended to read as follows:

"1. The type laundromat contemplated by defendant and presently in operation complies with the zoning restrictions on this property as they were in effect prior to December 5, 1967. However, such use is not permitted under the amendment of that date, except as a non-conforming use."

Defendant's exception 10(b) is affirmed, and it is hereby ordered that A. Harvey Stewart, as well as any person claiming under or through him, is hereby enjoined from permitting the building addition which he constructed after September 19, 1967, on his property, known as lot no. 7 in the Albert Deemer Plan of Lots situate in the Borough of Ellport, Lawrence County, Pa., to remain upon the said property and is held responsible for the immediate removal thereof.

It is further ordered that defendant herein may continue his nonconforming use operation, as it has been described in these proceedings, in that portion of the building which was located on the property in question on September 19, 1967.

The balance of plaintiff's exceptions and defendant's exceptions is each hereby refused.