Medinger Appeal.

Argued January 6, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*David E. Groshens,* with him *John E. Landis,* for appellant.

*Harold W. Spencer,* with him *Wright, Mauck, Hawes & Spencer,* for appellees.

*James S. Clifford, Jr.* and *John E. Forsythe,* Solicitor of Lower Merion Township, filed a brief for amicus curiae.

*William F. Bohlen* and *Robert V. Massey, Jr.* filed a brief for amicus curiae.

*Frederick A. VanDenbergh, Jr., Joseph P. Flanagan, Jr.* and *Saul, Ewing, Remick & Saul,* filed a brief for amicus curiae.

OPINION BY MR. JUSTICE BELL, March 24, 1954:

A narrow question is presented in this zoning appeal. Was the sliding scale of minimum habitable floor area which varied in different districts of the township constitutional?

A Zoning Ordinance, No. 309, dated December 16, 1940, as amended August 11, 1948, passed pursuant to the enabling Act of June 24, 1931, as amended by the Act of May 27, 1949*, divides Springfield Township into various districts and prescribes a different requirement as to minimum habitable floor area in each district. Section 200 provides for two-story houses as follows: "AA"—1800 feet minimum habitable floor area, "A"—1400, "B"—1125 feet, "C"—1000 feet, "D"—1000 feet.

In 1949 Mr. and Mrs. Medinger purchased a parcel of ground in Springfield Township containing approximately 300 feet on Montgomery Avenue, and approximately 201 feet in depth on Evergreen Avenue. The premises which comprise approximately 1½ acres are situated in a residential district zoned "AA". Mr. and Mrs. Medinger petitioned for a building permit to erect a residence which contained only 1125 square feet of habitable floor area. They wished and planned to erect an early 1700 Colonial Bucks County farmhouse. For over 20 years they had been collecting materials to build such a home, including original roof tiles, imported Swedish glass, hand forged iron, special lumber and hardware and other authentic material.

As early as 1937 petitioners engaged an architect (who specialized in old Colonial houses) to draw plans for this Colonial farmhouse, and the Court below found that if these plans had to be redrafted (a) it would involve considerable expense; (b) the acquisition of additional original authentic material would be difficult if not impossible; and (c) the use of contemporary material substitutes would destroy the architectural beauty and authenticity as an early 1700 Colonial type Bucks County farmhouse. The house as presently de-

---

* P. L. 1206, Art. XXXI, §3101, 53 PS §19092-3101.

signed is both unusual and beautiful and would cost, exclusive of ground, $20,000 to $25,000.

This case arose, as we have seen, on a petition by the owners for a building permit which was refused. The owners appealed to the Board of Adjustment which dismissed the petition. The petitioners, pursuant to the zoning law, then appealed to the Court of Common Pleas which reversed the Board of Adjustment, held the Ordinance unconstitutional, and directed the building inspector to issue a building permit for the house hereinabove described. This was a proper procedure to test the validity, applicability and constitutionality of the Ordinance as it applied to the ground and proposed building of these petitioners. The remedy or method of procedure prescribed by the zoning law must be pursued, but its pursuit does not admit the constitutionality of the Act or of the Ordinance, or prevent the petitioner from raising, or the Court from determining the constitutionality of the Act or Ordinance: *Taylor v. Moore,*[*] 303 Pa. 469, 473, 476, 154 A. 799; *Commonwealth v. De Baldo,* 169 Pa. Superior Ct. 363, 368, 82 A. 2d 578; cf, also *Lukens v. Board of Adjustment,* 367 Pa. 608, 613, 80 A. 2d 765; *White's Appeal,* 287 Pa. 259, 134 A. 409.

The language of the Court in *Lord Appeal,* 368 Pa. 121, 81 A. 2d 533, is particularly appropriate. In that case, where this Court permitted the erection by an amateur radio operator of a large 32 foot high antenna mast in the back yard of his home, we reviewed numerous decisions pertaining to zoning as well as the historic background and some of the powers authorized and the limitations prescribed under the Constitution,

---

[*] The dictum to the contrary in *Taylor v. Haverford Township,* 299 Pa. 402, 149 A. 639, was overruled in *Taylor v. Moore,* 303 Pa., supra, page 476.

and said (pages 125-126, 128) : ". . . an owner of property is still entitled in Pennsylvania to certain unalienable constitutional rights of liberty and property. These include a right to use his own home in any way he desires, provided he does not (1) violate any provision of the Federal or State Constitutions; or (2) create a nuisance; or (3) violate any covenant, restriction or easement; or (4) violate any laws or zoning or police regulations which are constitutional. It is now well settled that zoning acts and ordinances passed under them are valid and constitutional as structual or general legislation *whenever they are necessary for the preservation of public health, safety, morals or general welfare, and not unjustly discriminatory, or arbitrary, or unreasonable, or confiscatory in their application to a particular or specific piece of property*: White's Appeal, 287 Pa. 259, 134 A. 409; Taylor v. Moore, 303 Pa. 469, 154 A. 799; Kline v. Harrisburg, 362 Pa. 438, 451, 68 A. 2d 182; Jennings' Appeal, 330 Pa. 154, 198 A. 621; Ward's Appeal, 289 Pa. 458, 137 A. 630; Bryan v. City of Chester, 212 Pa. 259, 61 A. 894; Taylor v. Haverford Township, 299 Pa. 402, 149 A. 639; Perrin's Appeal, 305 Pa. 42, 48, 156 A. 305; Village of Euclid v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114; Penna. Coal Co. v. Mahon, 260 U. S. 393, 43 S. Ct. 158; St. Louis Poster Advertising Co. v. St. Louis, 249 U. S. 269, 39 S. Ct. 274; Eubank v. Richmond, 226 U. S. 137, 33 S. Ct. 76.

"Restrictions imposed by zoning ordinances are, however, in derogation of the common law and (at times) of the liberties, rights and privileges guaranteed by the Constitution of the United States and the Constitution of Pennsylvania and therefore must be strictly construed: Lukens v. Zoning Board of Adjustment, 367 Pa. 608, 80 A. 2d 765; Kline v. Harrisburg, 362 Pa. 438, 451, 68 A. 2d 182."

222

In *White's Appeal*, 287 Pa., supra, an ordinance which divided the city into districts and regulated the use of the land and buildings thereon, provided, inter alia, as follows: " ' "(b) When the front wall of eighty (80) per cent of all the buildings on one side of a street between two (2) intersecting streets have been kept back from the street line, no building hereafter erected, or altered, shall be placed nearer to the street line than the distance established by the majority of the eighty (80) per cent at the time of the passage of this ordinance; . . ." ' " This part of the ordinance was held to be unconstitutional and a home owner was permitted to violate this setback provision by enclosing an open porch and converting it into a room in the front of his house.

The Court said (page 265) : ". . . all property is held in subordination to the right of its reasonable regulation by the government *clearly necessary*\* to preserve the health, safety or morals of the people. . . There is one matter that is quite certain, the power to thus regulate does not extend to an arbitrary, unnecessary or unreasonable intermeddling with the private ownership of property, even though such acts be labeled for the preservation of health, safety and general welfare. The exercise must have a substantial relation to the public good within the spheres held proper. It must not be from an arbitrary desire to resist the natural operation of economic laws or for purely aesthetic considerations: Welch v. Swasey, 214 U. S. 91; Coppage v. Kansas, 236 U. S. 1, 18; Boyd v. United States, 116 U. S. 616, 635; St. Louis Poster Advertising Co. v. St. Louis, 249 U. S. 269; Cooley on Constitutional Limitations, 768. While such regulations may not physically take the property, *they do so regulate its use as to deprive the owner of a substantial right therein without*

---

\* Italics ours.

*compensation.*\* 'We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change': Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 416. . . . 'To secure their property was one of the great ends for which men entered society. The right to acquire and own property, and to deal with it and use it as the owner chooses so long as the use harms nobody, is a natural right. It does not owe its origin to constitutions. It existed before them. It is a part of the citizen's natural liberty,—an expression of his freedom,—guaranteed as inviolate by every American bill of rights': Spann v. Dallas, 111 Tex. 350, 235 S. W. 513. . . . To bring this, and other like regulations, under the police power, would be to sweep away constitutional guarantees on the ownership of property. It is regulation run mad. . . ."

*White's Appeal* was reaffirmed and the aforesaid excerpts from its opinion were quoted with approval in the recent case of *Rolling Green Golf Club Case,* 374 Pa. 450, 97 A. 2d 523.

With these principles in mind we shall examine the Act and the Ordinance passed pursuant thereto.

Section 3101 of the Act of 1931 as amended by the Act of 1949, supra, provides: *"For the purpose of promoting health, safety, morals, or the general welfare of townships,*\* the boards of township commissioners are hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, their construction, alteration, extension, repair, maintenance, and all facilities and services in or about such buildings and structures, and percentage of lot that may be occupied, the size of yards, courts, and

---

\* Italics ours.

other open spaces, the density of population and the location and use of buildings, structures, and land for trade, industry, residence, or other purpose; and may also establish and maintain building lines and set back building lines upon any or all public streets and highways."

Section 3102 of Article XXXI reads: "For any or all said purposes, the board of township commissioners may divide the township into districts of such number, shape, and area as may be deemed best suited to carry out the purpose of this article. Within such districts, it may regulate and restrict the erection, construction, reconstruction, alteration, repair, or use of buildings, structures, or land. All such regulations shall be uniform for each class or kind of buildings throughout each district, but the regulations in one district may differ from those in another district."

While Section 3101 empowers the commissioners to regulate and restrict the height, number of stories and size of buildings, Section 3102 for some reason omitted these words in granting the commissioners certain powers, after dividing the Township into districts.

It is unnecessary to quote the Ordinance; suffice it to say that it conforms with the terms of the enabling Act.

It is important to note that all of the powers granted by the Act and the Ordinance are limited—(1) they must be for the purpose of promoting the health, safety, morals or the public welfare as specifically prescribed by the Act, and (2) they may not infringe or violate any rights established by the Constitution.

Appellants contend that a sliding minimum scale of habitable floor areas in residential properties, which varies in various districts, promotes the health, safety and morals of the community. There was no attempt or

intent to measure the habitable area of a home by the number of persons who would occupy it, and there was no proof that the ordinance as drawn would protect or affect any person's health or morals. Moreover, it is obvious that the ordinance does not materially (if at all) increase or decrease fire hazards and consequently it has no substantial and clearly necessary relation to safety. We find this contention of appellants to be utterly devoid of merit.

It does not follow that a minimum scale of habitable floor space in a home may not have a reasonable, direct and proper relation to the health and morals, and possibly, to the safety of the occupants of the house or of the community in general, because it is well known that an overcrowding of persons or of members of a large family in a tiny house or in a small room or rooms might undoubtedly have a direct effect on their health and morals. But if a 1000-minimum habitable square feet is reasonable and proper for every home in one district and does not adversely affect the health, morals or safety of the occupants of such a house, 1125 square feet of habitable floor area in a nearby house cannot adversely affect the health, morals or safety of that home or of that community.

The natural or zealous desire of many zoning boards to protect, improve and develop their community, to plan a city or a township or a community that is both practical and beautiful, and to conserve the property values as well as the "tone" of that community is commendable. But they must remember that property owners have certain rights which are ordained, protected and preserved in our Constitution and which neither zeal nor worthwhile objectives can impinge upon or abolish.

We have seen that this ordinance cannot possibly be sustained on the ground that it promotes the health,

morals or safety of the community; can it be sustained as promoting the "general welfare"? These broad general words which are difficult to define must be construed in connection with their statutory context as well as with and subordinate to the individual and property rights which are guaranteed by the Constitution.

". . . A home owner cannot be deprived by zoning of a right to use his own property as he wishes merely because a zoning board believes that what he intends to erect is not artistic or aesthetic: Liggett's Petition, 291 Pa. 109, 118, 139 A. 619; White's Appeal, 287 Pa. 259, 266, supra; Miller v. Seaman, 137 Pa. Superior Ct. 24, 8 A. 2d 415. . . .": *Lord Appeal,* 368 Pa., supra, page 128.

We therefore hold that neither aesthetic reasons nor the conservation of property values or the stabilization of economic values in a township are, singly or combined, sufficient to promote the health or the morals or the safety or the general welfare of the township or its inhabitants or property owners, within the meaning of the enabling Act of 1931, as amended, or under the Constitution of Pennsylvania. Cf. *White's Appeal,* 287 Pa., supra, and *Lord Appeal,* 368 Pa., supra; also *Pincus v. Power,* 376 Pa. 175, 101 A. 2d 914, and *Taylor v. Haverford Township,* 299 Pa., supra, where the converse principle was recognized.

This ordinance flies in the face of our birthright of Liberty and our American Way of Life, and is interdicted by the Constitution.

The Order of the Court below is affirmed; appellants to pay the costs.