## The First Pennsylvania Banking and Trust Company v. Zoning Board of Adjustment

*Walter B. Saul* and *Joseph P. Flanagan, Jr.*, for applicant.

*Richard H. Markowitz*, for zoning board.

KUN, P. J., January 9, 1956.—This appeal is from the refusal of the zoning board of adjustment to grant a permit to The First Pennsylvania Banking and Trust Company, appellant, in behalf of its Erie Branch, located at the northwest corner of Erie Avenue and Sixth Street, to operate a private open-air parking lot for the convenience of its depositors and customers coming to the bank in cars to do business. The evidence before the court was that the area involved is largely commercial with considerable traffic running through it. The volume of cars has increased to such an extent that the city has put parking meters on the west side of Sixth Street. The evidence discloses, also, that there are frequent cases of so called double parking in and around the intersection, because of the congestion.

The properties for which applicant sought a permit are premises 3721-23-25 North Sixth Street, which

applicant was obliged to purchase, intending to use the lot as a private parking place for the benefit of its customers, because they cannot find parking facilities in the immediate area of the bank, making it quite inconvenient for them to do business with the bank. Applicant anticipates the demolition of the three small houses on the property, grading and paving the lots in full compliance with all local requirements.

The extraordinary feature of this case is that applicant did receive approvals from all city agencies and boards having jurisdiction over various phases of the matter, until in the course of processing its application came before the zoning board of adjustment. Only one protestant appeared at the public hearing held by the board, which denied the application. At the hearing before the court, at which no protestant appeared, further testimony was taken.

As stated, the present case involves property located in a district zoned "D" residential. On the question of open-air parking of automobiles, the Zoning Ordinance provides:

"26(6) OPEN AIR PARKING OF AUTOMOBILES. Open air parking of automobiles shall not be permitted in 'AA', 'A', or 'B' residential districts, and in any other residential or commercial district shall require a Board of Adjustment certificate as hereinafter provided."

It will be noted that the ordinance makes no distinction between parking in "D" residential and "A" commercial districts. The board made certain findings in relation to traffic safety conditions involved, contrary to the opinions of city officials directly charged with such responsibility in those fields. For instance, section 5-500(d) of the Home Rule Charter of Philadelphia vests the department of streets with jurisdiction "of promoting the safety and unimpeded movement of vehicular and pedestrian traffic"; and under section

5-200(a) of the charter, the police department is charged with the duty to "enforce traffic statutes, ordinances and regulations relating thereto".

Representatives of both the police department and of the bureau of traffic engineering appeared before the court and gave their official approval of the application, stating that the private parking lot proposed by applicant would very much improve traffic conditions in the area. Professor Wilson, head of the transportation department of the University of Pennsylvania, following a study by him of the situation, also testified that traffic conditions would be very much improved by the proposed off-street private parking, all of which views seem to us quite sensible, because we had occasion to note in another case: "In this day and age off-street parking for banks, and indeed of other establishments, is indispensable to the carrying on of business. In fact, it adds to the public convenience."

There are a number of other findings made by the board, unjustified by the record. The board made a finding that there are three schools in the vicinity serving approximately 2,000 children. The implication, that all these children are involved, was most unjustified. The traffic safety engineer of the Philadelphia School Board appeared before the court and stated that from the standpoint of the public school system, only about 50 children at most would be in the vicinity of the proposed parking lot, which would be open only one period of the day that school children would pass it, that having the cars of customers of applicant on a private parking lot, instead of having them cruising around for parking spaces, would, in fact, result in improving the safety of children of school age in the immediate vicinity.

Considering the fact that questions relating to the effect of a private parking lot on general traffic conditions had been passed on favorably to applicant by the

appropriate city agencies, it was somewhat beyond the scope of the zoning board of adjustment to, in a sense, overrule them. In a case where the zoning board refused to grant a permit for a residence, because in the opinion of the board the residence did not have sufficient habitable floor area, its action was reversed, the court holding that the statute giving the board authority to act on that basis was unconstituional, as the subject matter, at least as treated in the act of assembly involved, had no relation to the health, safety, morals or general welfare of the people: Medinger Appeal, 377 Pa. 217. This followed cases along the same line, which were cited in the opinion.

It also appears to us that the board failed to take into account the fact that there is presently existing and in operation an open-air lot used by a beverage bottling concern which, according to photographs submitted to the court, has a large number of boxes and crates of bottled goods piled up against the wall and uses its lot for the ingress and egress of trucks in the delivery of its products. This is only a few doors away from the lot of applicant, which it proposes to use, as stated, merely for the convenience of its customers who come to its branch bank across the street.

There is no foundation for the board's finding that there is "substantial protest" in the neighborhood and that protestants appeared. The records show that only one protestant appeared before the board and none before the court. This case is not like Katzin v. McShain, 371 Pa. 251, where some 60 neighboring home owners protested against a proposed garage for trucks, and the court was of the opinion that such use would be a "hardship" on that large number of neighbors. There is no such situation here.

It would be well if officials interested in this field would read the opinions of the Supreme Court in Lord Appeal, 368 Pa. 121, and Medinger Appeal, supra,

pointing out the limitations of restrictions that can be placed on the use of private property, and that merely labeling acts as being for the preservation of the health, safety and general welfare does not make them so. To bring such acts or limitations within the legitimate scope of the police power, there must be some rational relationship between them and the health, safety, morals and general welfare. As to the last words, "general welfare", the court in Medinger Appeal, supra, at p. 226, said:

"These broad general words which are difficult to define must be construed in connection with their statutory context as well as with and subordinate to the individual and property rights which are guaranteed by the Constitution."

It should be noted that zoning ordinances are passed pursuant to the Enabling Act of May 6, 1929, P. L. 1551, 53 PS §3824, sec. 3, which provides, inter alia, that one of the purposes is "to lessen congestion in the streets". According to all the proofs, this is exactly what applicant's proposed use of its lot would do which, no doubt, accounts for the fact that the traffic engineering department and the police department have officially given their approval to applicant's proposal.

Considering the fact that all other relevant city agencies, charged with certain aspects of the matter involved, have given their approval of the proposed use by applicant of the site in question, for a private parking lot for its customers, and the proofs before the court that amply satisfied us that the use of applicant's property, as proposed, would in no wise affect the health, safety, morals and general welfare of the people, that it would largely be an aid to their safety, we conclude that it was an abuse of discretion on the part of the board to refuse applicant's request for a permit, for the use of its lot for private parking of cars of its customers.

Accordingly, the action of the zoning board of adjustment is reversed, and it is directed to issue to applicant the permit for a private parking lot for which it applied.