Garbev Zoning Case.

Argued May 1, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Robert B. Greer,* with him *Butler, Beatty, Greer & Johnson,* for appellant.

*Bernard G. Segal,* with him *Guy G. deFuria, Harold B. Bornemann, deFuria, Larkin & deFuria* and *Schnader, Harrison, Segal & Lewis,* for appellee.

OPINION BY MR. JUSTICE BELL, May 21, 1956:

The owner of a 13 acre tract of land which was classified R-2 residential applied for a building permit

to erect a supermarket and adjoining incidental retail stores with parking areas thereon. Prior to January 4, 1955, much of the land in question had been zoned B business. The petition asked for a variance and other relief. The building inspector refused to grant the petition on the ground that the application was for a business purpose in a residential zone. The Board of Adjustment denied the appeal. The Court of Common Pleas took testimony, sustained the appeal and concluded that the zoning ordinance was, as to this tract of land, arbitrary, discriminatory, confiscatory and therefore unconstitutional.

The procedure followed by Garbev was in accordance with that prescribed by *Jacobs v. Fetzer,* 381 Pa. 262, 112 A. 2d 356; however, it "did not prevent the petitioner from raising or the Court from determining the constitutionality of the act or ordinance": *Medinger Appeal,* 377 Pa. 217, 220, 104 A. 2d 118; see also *Baronoff v. Zoning Board of Adjustment,* 385 Pa. 110, 122 A. 2d 65.

The Chancellor made the following material findings:

"The property in question is an irregular tract of ground of approximately 13 acres situate in the Township of Upper Darby.

"Appellant's land is bounded on the east for a distance of 1053 feet by the freight line of the Newtown Square Branch of the Pennsylvania Railroad Company. This railroad is at grade over Garrett Road and over appellant's land either at grade or elevated because of the slope of the ground. The railroad, which has been in existence for about 75 years, is used for two freight trains daily. At Garrett Road, at grade, there is an area of about 350 feet by 100 feet, which for many years has been used for the storage of freight and heavy materials and supplies.

"The rear line of the involved tract, which is the south boundary, is 943 feet long and this tract is adjoined on the south by other land of appellant extending to Marshall Road. This is vacant ground . . . and access to it will be from Marshall Road.

"The west boundary of appellant's land is 853 feet long and consists of the rear property line of 15 dwellings which front on Clearbrook Avenue away from appellant's land. There is no street access to appellant's land from Clearbrook Avenue.

"Naylor's Run is a natural stream traversing the subject tract from north to south, this stream being below grade and causing considerable flooding at various times during the year.

"The dwellings on Clearbrook Avenue are the closest buildings to the tract of appellant and will be separated from any structures proposed to be erected by appellant by at least 180 feet, including Naylor's Run.

"The north boundary of appellant's tract, being the side toward Garrett Road, is 372 feet in length.

"The lot at the corner of Clearbrook Road and Garrett Road, 131 feet by 100 feet, is used and has been used for many years for automobile parking.

. . .

"The 13 acre tract of appellant which is the subject of this appeal has no street access except for about 125 feet on Garrett Road east of Naylor's Run and west of the said railroad. The tract is, therefore, isolated from adjoining streets, dwellings and buildings.

"Naylor's Run, at the subject tract drains an area of approximately 3.675 square miles.

"In case of heavy rain, the tract is flooded and drains away for some days, flash floods occurring quite often during the summer months.

"The railroad crosses Naylor's Run on the rear line of the tract, over an elevated railroad bridge.

"For a distance of more than 400 feet northwest-wardly along the rear line of the tract, there are a sewer line and two 36 inch concrete storm sewers extending eastwardly from inlets at the intersection of Greenhill Road and Clearbrook Avenue, carrying water from that intersection and discharging it into Naylor's Run, and the contour of these sewers is visible above the surface of the ground.

*"These sewers are sufficiently close to the surface of the ground to adversely affect or prohibit any building or construction over them.** *

"The involved tract for more than ten years has been used for the commercial operation of a pay-as-you-go public golf course.

. . .

"About 90 per cent of the subject property is below the level of Garrett Road.

"In order to use the land for residential purposes under the R-2 classification of the Upper Darby zoning ordinance, it would be necessary to confine Naylor's Run by constructing either three 84 inch reinforced concrete pipes laid parallel or a two cell box culvert. In addition, about *48,240 cubic feet of earth would have to be purchased, brought into the property, and used as fill.*. The cost of this work would be $341,448.00 using the box culvert and $335,160.00 using the reinforced concrete pipes.

"It would be possible to relocate and control Naylor's Run in a manner permitted by the Building Code of the Township by the use of what is called rip-rapping; that is, sloping the banks by cutting back each bank one and one-half feet for each foot of depth and placing stones on the slopes to prevent erosion. The cost of this would be about one-third of the cost of the

---

* Italics throughout, ours.

box culvert method, or of the method of installing 3-84″ pipes. In other words, the cost of a rip-rapping operation would be approximately $112,000.00. However, the additional ground required for the slopes would make this method impractical in the situation at bar.

*"The [above] expense . . . would not be required if the land were used for business purposes.*

*"Appellant's land is not suited for residential purposes because of the difficult problems presented by Naylor's Run, the storm and sanitary sewers crossing part of it, the heavy traffic along Garrett Road, the railroad which borders the property, the railroad freight area adjoining the property on the east, the unsightly elevated trolley bridge along the north side of Garrett Road with almost constant noise from passing trains, and the limited access to the tract.*

*"It would not be economically feasible or practical to build houses on this tract.*

. . .

"If appellant's land is used for the construction of a super-market, there will be no adverse effect upon the health of the residents of adjoining parts of the township, but on the contrary there will be removal of the present flood condition and mosquito breeding.

"If appellant's land is used for the construction of a super-market, there will be no adverse effect on the morals of the people of the township.

". . . there would be an increase of the traffic on Garrett Road, but such increase would not coincide with the present peak traffic periods and there would be no increased hazard or damage from increased traffic or any other condition.

. . .

"If appellant's land is used for the construction of a super-market, there will be no adverse effect on the

adjacent residences by reason of noise, confusion or light.

"If appellant's land is used for the construction of a super-market, there will be no adverse effect on property values of the dwellings in the vicinity.

. . .

"The literal enforcement of this ordinance would impose an unnecessary hardship on the subject property. The land is not suited for residential purposes because of the difficult problems presented by Naylor's Run, the storm and sanitary sewers crossing part of it, the heavy traffic along Garrett Road, the railroad which borders the property, the railroad freight area adjoining the property on the east, the unsightly elevated train bridge along the north side of Garrett Road with almost constant noise from passing trains and the fact that there is no passenger station within several blocks of the subject tract and the limited access to the tract. Only at prohibitive expense could the land ever be adapted for residential use and even then the aforementioned conditions would prevent the sale of houses sufficiently expensive to permit recoupment of the cost of rendering the land usable."

In *Medinger Appeal,* 377 Pa., supra, the Court said (pages 220, 221) : "The language of the Court in Lord Appeal, 368 Pa. 121, 81 A. 2d 533, is particularly appropriate. . . . It is now well settled that zoning acts and ordinances passed under them are valid and constitutional as structural or general legislation whenever they are necessary for the preservation of public health, safety, morals or general welfare, and not unjustly discriminatory, or arbitrary, or unreasonable, or confiscatory in their application to a particular or specific piece of property. . . ."

Where, as here, the Court took additional evidence, it may reverse or affirm in whole or in part and make

such decision as to it may appear just and proper under the evidence and the applicable principles of law: *Volpe Appeal,* 384 Pa. 374, 121 A. 2d 97; *Pincus v. Power,* 376 Pa. 175, 101 A. 2d 914; *Silverco, Inc. v. Zoning Board of Adjustment,* 379 Pa. 497, 109 A. 2d 147.

In *Silverco, Inc. v. Zoning Board of Adjustment,* 379 Pa., supra, this Court, quoting from *Rolling Green Golf Club Case,* 374 Pa. 450, 458, 459, 97 A. 2d 523, said: "On appeal from a decision of a Court of Common Pleas in a zoning matter the case comes before an appellate Court as on certiorari, and where there is adequate evidence to support the findings of the Court below and the proceeding is free from error of law and there has been no manifest abuse of discretion, the decision will not be reversed. Cf. Dooling's Windy Hill v. Springfield Township, 371 Pa., supra; Lindquist Appeal, 364 Pa., supra."

The Township Commissioners contended as the basis for their appeal that the evidence was inadequate to support either the findings of fact or the conclusions of the lower Court. They arrived at this conclusion—not by presenting evidence to refute petitioner's evidence, but—by pointing out what they believed the property owner should have proved but failed to. We deem it unnecessary to recite at great length the evidence which was presented to the lower Court. Suffice it to say that we have read the evidence and we believe it adequately supports the findings of fact and conclusions of law made by the lower Court. The zoning ordinance, as applied to this tract of land, was arbitrary, confiscatory and unconstitutional.

Decree affirmed; each party to pay its own costs.