## Bauer Appeal

*Edward J. Steiner,* for appellants.

*Joseph A. Nickleach,* for contra.

HOUSE, P. J., October 15, 1973.—Before the court is the appeal of James E. Bauer and Charlotte W. Bauer, his wife, taken from the action of the South Buffalo Township Zoning Hearing Board sustaining the refusal of the township zoning officer to issue a zoning permit pursuant to appellants' application.

On April 28, 1973, appellants made application for a zoning certificate or permit, stating that the application was for construction of a new "residence" building on a tract of land owned by appellants and containing some 80 acres. The application showed that this residence was to contain 2,800 square feet; that the present use of the tract was as a "farm" and that the proposed use was as a "farm and home"; and that the location of the proposed residence building was in a district zoned "M-1."

On the same date, April 28, 1973, the zoning officer refused to issue a zoning certificate to appellants in the following form:

## "DISAPPROVAL

"Proposed use of the above described property as indicated in the application for a zoning certificate is disapproved because the same conflicts with the following provisions of the Zoning Ordinance: Art. 2,203 Permitted Uses and Table 201. Residence would be in Area M-1 Industrial. Residence not a permitted use."

Appellants immediately appealed the zoning officer's action to the Township Zoning Hearing Board and, on June 7, 1973, hearing was held on the appeal before two of the three members of the Township Zoning Hearing Board. Upon completion of testimony, the

hearing board, speaking through its chairman, delivered an oral opinion and order sustaining the action of the zoning officer and dismissing the appeal. Later, an undated written opinion and order was entered by the Zoning Hearing Board confirming its oral order and containing also certain Findings of Fact and Findings of Law.

On July 6, 1973, appellants took their appeal to this court from the action of the Township Zoning Hearing Board.

Appellants contend that:

1. Agriculture is a permitted use in the M-1 zoning district;

2. A residence building or farmhouse is necessarily an incident to the use of the land for agriculture;

3. The use of the tract for agricultural purposes will continue in the future, as in the past, except that appellants will be residing in a new dwelling in a different location on the farm;

4. The construction and occupancy of a new residential building on the tract is thus permissible under the Township Zoning Ordinance;

5. The action of the zoning officer as confirmed by the Zoning Hearing Board is arbitrary and capricious.

On the other hand, appellee contends that:

1. While "agriculture" is a permitted use in the M-1 zoning district, appellants have not shown that the new residence building is either "for agriculture" or "an accessory farm building";

2. That no permitted use in an M-1 district other than "agriculture" can possibly justify the issuance of a zoning certificate for this building;

3. No hardship can result to appellants by reason of the action of the zoning officer and Zoning Hearing Board because part of appellants' tract is situate in

an R-3 district where the proposed building clearly would be a permitted use;

4. That the proposed location of the building is impermissibly close to a property line.

Counsel for appellants and appellee have submitted both oral and written argument upon the issues.

It is undisputed that "agriculture" is a permitted use in an M-1 (industrial) zoning district: Zoning Ordinance 21, South Buffalo Township, Armstrong County, Pa. Art. 2, sec. 203, Table 201.

It is undisputed that this particular M-1 zoning district presently contains no industrial use of any description and that the district is devoted exclusively to residential and farming uses: Zoning Hearing Board Opinion No. 12, Finding of Fact No. 14.

It is undisputed that appellants' tract, containing some 80 acres and including that portion situate in the M-1 zoning district, has been devoted to farming in the past and will be devoted to farming in the future: Zoning Board Opinion No. 12, Findings of Fact Nos. 6 and 13.

In article 6 (definitions), section 601.1 of ordinance 21, supra, we find the following definition:

"Agriculture: Any use of land or structures for farming, dairying, pasturage, agriculture, horticulture, floriculture, arboriculture, or animal or poultry husbandry. Uses permitted in conjunction with an agricultural use may include barns, stables, corn cribs, silos and any other use or structure that is clearly related to an agricultural operation."

A number of cases have held that zoning ordinances are to be strictly construed so as not to circumscribe the owner's use of his land; that is, the zoning ordinance is to be construed so as to allow the owners the widest possible use of the land which is

not specifically prohibited by the ordinace: Lord Appeal, 368 Pa. 121 (1951).

The rationale of these decisions is that all zoning ordinances necessarily restrict an owner's common law right to use his land as he chooses and, therefore, being in derogation of the common law, such ordinances must be strictly construed: Medinger Appeal, 377 Pa. 217 (1954).

A strict construction of the South Buffalo Township Zoning Ordinance requires that we must view the ordinance in a light most favorable to the land owner. Section 601.1 of the zoning ordinance, strictly construed, clearly permits *any* use of the land for any farm pursuit.

It is clear that the land here is being used for farming at the present time and it is undisputed that the land will be devoted to a similar use or an expanded similar use in the future.

We need no appellate decisions nor legalistic reasoning to guide us to the conclusion that permanent human habitations are customarily erected upon tracts of land devoted to agricultural uses for occupancy by the owner and tillers of the land.

There seems to be little reason to doubt that if applicant were an "active farmer" the zoning officer would have approved the application and issued the certificate.

The crux of the problem in this case seems to be that the zoning officer and the Zoning Hearing Board were unconvinced that appellants are or will be engaged in "farming" their tract of land or that the proposed residential building will be devoted to any significant degree to the "pursuit of agriculture." Both the zoning officer and the Zoning Hearing Board seem to have focused upon the fact that the husband-appellant has a full-time professional pursuit unre-

lated to agriculture and upon the further fact that the residential building which appellants propose to construct does not appear to fit the traditional concept of a farmhouse.

The husband-appellant frankly concedes that he is not a farmer in the sense that he engages in farming as his principal occupation and livelihood. It is commonly known that while there are many full-time farmers still conducting agricultural operations in Armstrong County, a great many persons who farm also pursue full-time or part-time employments in commerce, industry, government and the professions. The concept of agriculture or farming has always been one of broad scope. Thus, by dictionary definition, a farmer may be one who actually tills the land or he may be a manager of a farm or, indeed, he may even be that modern legal person, a corporation.

Construing the ordinance in a light most favorable to the land owner, we hold, in the absence of any express restriction in the zoning ordinance, that the owners of a tract of land who devote the land to agricultural use, albeit through tenants or hired hands, are themselves engaged in agriculture. Likewise, in the absence of any express restriction in the zoning ordinance, the owners need not show that they spend any significant amount of time or effort in tilling or managing the land in order to qualify as farmers. Finally, we hold that, in absence of any express restriction in the zoning ordinance, the owners of a tract of land which they devote to agricultural use in an M-1 zoning district are privileged to erect anywhere on such tract a personal residence of such size and containing such architectural features as they alone see fit so long as the location, size and architectural features do not contravene other express provisions of the zoning ordinance. The fact that, un-

der the ordinance, dwellings are expressly permitted in R-3 zoning districts and are not an expressly permitted use in M-1 zoning districts is not material since agriculture is a permitted use in both zones and the agricultural use necessarily encompasses permanent human habitations within its scope.

While it is certainly not the gravamen of this proceeding, it should be noted that the character of this M-1 zoning district is entirely rural residential and agricultural. There are no industrial uses at all at present. The construction of a residence building will be a mere expansion of present exclusive uses and will be in keeping with the nature of the entire surrounding area both within the M-1 district and the zoning districts abutting thereon.

The Board of Supervisors of South Buffalo Township, in adopting the zoning ordinance, clearly intended to encourage the development and continued use of the land area of the township for agricultural purposes. Every zoning district in the township, without exception, expressly permits agriculture within its borders. Thus, although certain zones may be set aside for present or future commercial, industrial, or residential development, it is plain that the legislative intention of the governing body was to favor agricultural use of *all* of the lands in the township over every other permissible or possible use. These owners have held title to this tract for well over a year and have continued to devote the tract, or a large part of it, to agricultural cultivation and uses. They have testified that they intend to continue to devote the land to agricultural cultivation and uses in the future. Nothing more is required of them under a strict construction of this ordinance.

It is interesting to note that the ordinance permits "summer cottages" as a conditional use in an M-1

zoning district. It would be absurd to postulate that the legislative body intended to make it permissible for the owners of land devoted to agricultural use to build a part-time residence upon their land but to make it impermissible for them to build a full-time residence thereon. Moreover, since the term "summer cottage" remains undefined in the ordinance, such a structure may well be indistinguishable from the structure which appellants propose to use for full-time habitation.

As observed above, the definition of agriculture as used in the ordinance is extremely broad and unrestricted in scope. For instance, it does not purport to require the making of a profit or the intention to make a profit; it does not require the devotion of any minimum amount of time to agriculture; it does not require the devotion of any minimum land area to agriculture; it does not require that any particular branch of agriculture be pursued; it does not require that farm residences be located within line of sight of productive areas or located in close proximity to the various permitted farm related structures; it does not limit the number of buildings so long as they are related in some manner to the agricultural use of the land.

It is odd, unquestionably, that dwellings were not expressly included in the definition of agriculture contained in the ordinance. This omission can be accounted for only by concluding that the legislative body simply assumed that dwellings were indispensable to any agricultural use and considered it unnecessary to make the express inclusion of that or any other similar term.

ORDER

And now, October 15, 1973, for the reasons set forth in the attached opinion, the action of the South

Buffalo Township Zoning Officer and the South Buffalo Township Zoning Hearing Board in the above captioned matter is reversed and vacated and the said zoning officer is ordered and directed to issue forthwith to appellants a proper zoning certificate pursuant to the application upon receipt from appellants of a revised sketch showing distances from property lines, etc., which meet and do not contravene the criteria set forth in the zoning ordinance.