## Stambaugh v. Zoning Hearing Board of the City of York

*John M. Boddington,* for plaintiff.
*Janis M. Rozelle,* for defendant.

BUCKINGHAM, *J.,* December 12, 1984—This is an appeal from a decision by the York City Zoning Hearing board which denied appellant's request for building permits to construct a facility in which an automobile parts removal business would be operated.

Appellant, Donald E. Stambaugh, trading and doing business as Stambaugh's Used Auto Parts, is the owner of real property located at 127 North Broad Street in the City of York. The land contains a large, multi-story main building, formerly used as a manufacturing facility and a warehouse. For the past seven years, however, the facility has been vacant. Appellant, who currently operates two automobile service stations and a used car rental agency elsewhere in the city, plans to expand by using this facility to remove used parts from automobiles and warehouse the parts within the building for display and sale.

The city's zoning officer refused to grant building permits to appellant for his planned renovations of the facility because he ruled that such use would be for "scrap processing, auto wrecking and junk yards." This use is only allowed for those areas zoned as Heavy Industrial Districts (IH) according to section 1302.17 of the York City Zoning Ordinance. The premises, however, are within an area

zoned as a General Commercial District (CG), section 1302.13, which does not permit the use in which appellant's business was classified by the zoning officer.

A public hearing on the matter was held on July 19, 1984 before the York City Zoning Hearing Board. Appellant requested that the board interpret the zoning ordinance and determine whether his proposed use should be classified as a scrap processing, auto wrecking and a junk yard business, a use which would require a variance, or whether his proposed use was more nearly an auto repair business, which would be permitted in the CG Zoning District. The board determined that appellant's proposed use was most closely akin to a scrap processing, auto wrecking and a junk yard business as set forth in section 1302.17(b)(1)(c) and, of course, would not be permitted in the CG District where his facilities are located. Appellant's variance request, made necessary by this interpretation, was also considered and denied. We also note here that the York City Planning Commission had recommended disapproval of the variance request.

For this appeal appellant concedes the board's denial of his variance request and that issue is not before the court. Appellant is before us requesting that we reverse the zoning hearing board's decision and find that his proposed use of the facility is the functional equivalent of an auto repair facility and such use would be incidental to the warehousing and sales of used auto parts which is allowed in a CG Zoned District. We agree with this intrepretation of the city's zoning ordinance and we shall reverse the decision of the zoning hearing board and issue an order directing that the proper permits be issued to appellant.

Our review of this matter is g ided by firmly established legal principles. Since no additional evidence was taken by this court, our scope of review is limited to determining whether the board committed a manifest abuse of discretion or an error of law. Pyzdrowski v. Pittsburgh Board of Adjustment, 437 Pa. 481, 263 A.2d 670 (1970); Valley View Civic Association v. Zoning Board of Adjustment, 501 Pa. 550, 462 A.2d 637 (1983). A zoning ordinance, being in derogation of the common law and of the rights of property owners, must be strictly construed against the municipality. Archbishop O'Hara's Appeal, 389 Pa. 35, 131 A.2d 587 (1957); Medinger Appeal, 377 Pa. 217, 104 A.2d 118 (1954).

We find that the zoning hearing board committed an error of law when it found that the proposed use of the property was to be classified as "scrap processing, auto wrecking and junk yards" under the York City Zoning Ordinance §1302.17(b)(1)(c). Rather, based on the zoning board's findings of fact and strictly construing the ordinance against the city, we find appellant's proposed business to fall under "vehicular sales, rental and repair" and "retail store and business" pursuant to the York Zoning Ordinance §1302.13(b)(1), a use of the property allowed in a General Commercial (CG) District.

A brief summary of the zoning hearing board's findings of fact, which we must accept, shows that the proposed use of the premises involves the bringing in of used and wrecked automobiles where they will be stripped of usable parts. The stripping of usable parts from these cars will take place entirely inside the building using wrenches and cutting torches. The automobile parts will then be warehoused and sold from inside the building and will not be

visible from the outside. There will be no storage of parts from the outside. There will be no storage of parts or wrecked automobiles outside the building. The unsalvagable parts and the stripped automobiles will then be removed from the building directly off the premises. In conjunction with this use, appellant will be using the premises to conduct an automobile rental business, which is not involved in this appeal.

The facts and issues in this case are almost identical to those found in Munchback v. Hulmeville Borough Zoning Board of Adjustment, 76 York Leg. R.41 (Bucks County 1961). There, appellant planned to use a vacant factory in which his business would purchase junked automobiles, transport them to the interior of the building, remove the usable parts through the use of wrenches or cutting torches, resell the usable parts from a retail outlet located in the building, and dispose of the automobile remnants by having them hauled away to junk yards or junk dealers. All operations would be conducted inside the building and there was to be no storage of automobiles or parts outside the building. Since the Hulmeville Zoning Ordinance permitted lawful uses of the property in that area except for a "junk yard, salvage, or wrecking yard," the issue for the court was whether or not the business would come within that classification.

We believe the description of the business in the Munchback cases is identical to the one in the present case and, as in Munchback, appellant here would not be allowed to operate a business on the premises if it was classified as a "junk yard, salvage or auto wrecking yard." The only difference between these cases is that the York City Zoning Ordinance defines "junk yard" while the Hulmeville Zoning Ordinance did not.

In determining the classification of the proposed business, the Munchback court addressed the issue of whether or not such a business was a "junk yard." In finding that it was not, the court relied on case law and its own reasoning and stated:

"In the appellant's case, relatively few automobiles would be present in the building at any given time; the length of time during which any particular automobile would be present on the property would be relatively brief; there would be no burning of waste materials from the carcasses of the automobiles, and no baling, compacting or other processing of the resulting scrap metal. Moreover, appellant's establishment would have, in effect, an actual retail store as part of the operation.

"It therefore appears to us that, from the standpoint of the business activity itself, the appellant would not actually be engaged in the junk business as such . . .

". . . (i)t is immediately apparent that appellant's proposed establishment would not be a 'yard' of any kind, since all of his operations and all of his storage would occur inside the building . . . it certainly does not follow that the term 'yard' can properly be applied to a manufacturing building with no open spaces whatever used in connection therewith . . .

"It is therefore obvious that the business proposed to be conducted by this appellant would not be a junkyard as such." 76 York Leg. R. at 44. We agree with this analysis and shall rely on its reasoning in determining the classification of appellant's business.

In our review of the zoning hearing board's decision, we shall first discuss whether appellant's proposed use falls within the City's Zoning Ordinance definition of "scrap processing, auto wrecking and junk yards." While doing this we shall keep in mind the principle that a zoning ordinance, being in dero-

gation of the common law, must be strictly construed against the city. Medinger, supra. Section 1301 of the City's Zoning Ordinance lists the following definition:

"1301:48 Junk

"Junk" means any worn, cast-off discarded or stored material including, but not limited to, unlicensed vehicles, machinery and equipment ready for destruction or which has been collected for salvage or conversion to some use."

1301.49 Junk Yard

"Junk yard" means the use of more than 400 square feet of the area of any lot or the use of any portion of that half of any lot that joins any street for the storage, keeping or abandonment of junk."

We do not agree with the zoning hearing board's interpretation that the stripping and retail sale of used auto parts falls within the ordinance definition of a junk yard. The only possible way for the parts to be considered "junk" is that they are being collected for salvage. The parts are not, however, being "stored" because they are placed as inventory in a showroom for retail sale. Nor are they being converted to some use. Instead they are resold without alteration for the same use.

Even if we accept that these usable parts are "junk", we do not find that the ordinance classifies the premises as a "junk yard," Appellant's use of the parts is more that of inventory and we find he is not intending to use the "lot . . . for the storage, keeping or abandonment of junk." The usable parts are not abandoned or simply being kept by appellant. Nor are they there for storage. Webster's dictionary defines "storage" as a place to collect a reserved supply, lay away or accumulate, whereas, Webster's defines "inventory" as a list of merchandise held for sale. Appellant's proposed use of the property clearly

falls within the definition of "inventory" because retail sales of the parts will be conducted in a showroom on the premises. As in the Munchback case, we find appellant is not operating a "junk yard" as is defined in the applicable zoning ordinance. Accordingly, he may operate his business in a General Commercial (CG) District.

After coming to the conclusion that the activity was not a junk yard, the court in Munchback addressed the issue of whether it was substantially similar to one and what factors should be considered for zoning purposes. The court stated:

". . . in determining whether a proposed use is substantially similar to one of the prohibited uses, since this is a zoning ordinance, greater stress should be given to features which can be expected to manifest themselves externally, to surrounding property owners and passers-by. From this standpoint, the fact that the appellant's activities would be confined to the interior of the building is highly significant. As a practical matter, we can see little difference for zoning purposes, between appellant's proposed use and the operation of a typical body and fender repair shop or welding shop, both of which uses would unquestionably be permitted under the language of the Hulmeville Borough Zoning Ordinance." 76 York Leg. R. at 45.

In our present case, as in Munchback, close to appellant's premises is an auto repair facility which stores wrecked and disabled vehicles outside its building. Also nearby is the City of York's servicing center for its own highway equipment. As a practical matter, there can be little difference between these facilities and that proposed by appellant. Moreover, for zoning purposes, we see no reason that one should be classified as a junk yard while

the others, conducting activities similar to those proposed, are allowed to continue.

We find that appellant's proposed use of the facilities should be classified as "vehicular sales, rental and repair" and a "retail store and business." The description of appellant's business is more like an auto repair facility, a use of the property allowed in a General Commercial (CG) District. The stripping of usable parts is incidental to appellant's auto parts business and all work is conducted indoors. Strictly construing the statute against the municipality, the operation is clearly not "scrap processing, auto wrecking and junk yard" as defined in the ordinance. Accordingly, we see no reason to prevent appellant from conducting his proposed business.

We hold that the zoning hearing board has committed an error as a matter of law and we reverse its decision so that appellant may begin construction of his business.

An order will be entered in consonance with this opinion.

## ORDER

And now, this December 12, 1984, the decision of the Zoning Hearing Board of the City of York is reversed and the zoning officer is directed to issue to appellant the permits for which he has applied subject to the conditions that (1) appellant's operation, including but not being limited to the removal of the used parts from the used and/or wrecked automobiles and the warehousing and sale of the parts, shall be conducted within the building and (2) there shall be no storage of used or wrecked automobiles within the building or automobile parts or used or wrecked automobiles outside the building, provided however, the outside lot portion of the facility may

be used for customer and employee parking and the parking of fully road-worthly and operational used cars for rental from the premises.