## Davis Appeal

*Cassin W. Craig*, for appellant.

*Thomas J. Timoney*, for zoning board of adjustment.

KNIGHT, P. J., October 7, 1957.—

### Findings of Fact

We have examined the findings of fact as contained in the return of the board of adjustment and find that they are sustained by the evidence, and we therefor adopt them as our own. They are:

1. "The property which is the subject of this zoning case is located in 'A' residential district, in Lower Gwynedd Township.

2. "The area of this tract is approximately seven acres.

3. "Public water facilities are available.

4. "The Zoning Ordinance of Lower Gwynedd Township provided:

" 'SECTION 303-b. Where a building or structure is to be erected, altered or used upon a lot which prior to its occupancy or use will be serviced by either public water or public sewer facilities, a lot area of not less than 60,000 square feet per family, or per building in the case of uses other than single family detached dwellings, shall be required, provided that in the case

of a lot held in single and separate ownership at the effective date of this Ordinance (Ordinance No. 24) having an area of less than 60,000 square feet, a building may be erected thereon when authorized as a special exception.'

5. "Applicant, Gwynedd Gardens, Inc., is in the process of constructing a residential development known as Hamilton Park, containing approximately 70 acres on which 72 dwellings will be built on lots having a minimum area of 30,000 square feet.

6. "The various subdivision plans under which Gwynedd Gardens, Inc., is developing Hamilton Park were approved and recorded prior to the adoption of the ordinance requiring 60,000 square feet per lot where public water is furnished.

7. "The subject tract of land was purchased by Gwynedd Gardens, Inc., prior to the zoning amendment requiring 60,000 square feet.

8. "While the Supervisors of Lower Gwynedd Township were considering the adoption of the amending ordinance, part of the Hamilton Park Plan was approved; however, the engineering was not complete on the instant tract, therefore, the plan for its development was not approved prior to the adoption of the new ordinance. (R-28).

9. "The Zoning Officer of Lower Gwynedd Township properly refused to issue a permit to applicant because the lot for which the permit was requested was not in conformity with the Zoning Ordinance.

10. "Applicant appealed to the Zoning Board of Adjustment of Lower Gwynedd Township for a variance.

11. "It would be more economical or profitable for applicant to build on 30,000-square foot lots than on 60,000-square foot lots."

In addition, from the evidence produced in this court, the following findings of fact are made:

12. The tract in question is surrounded on two sides by applicant's 70-acre development of single houses on typically 30,000-square foot lots, that the houses on the larger tract range in value from $22,000 to $29,000, that to build on larger lots would substantially increase the cost and consequently the offering price of the houses on the instant tract, that it would be difficult, if not impossible, to attract buyers at the higher price level when the typical house in the neighborhood sells for less than $30,000.

13. Appellant, Gwynedd Gardens, has already built 27 houses on 30,000-square foot lots in the first two sections of the tract of which 22 are fully completed, several are occupied, the earliest in September, 1955, and no sewage or drainage problem has developed.

In porosity tests conducted by applicant's qualified civil engineers at representative locations across the tract and at depths which would correspond to the actual depths for seepage pits used in the individual sanitary systems, percolation rates for absorption of water by the soil ranged from six and two-thirds minutes per inch to one minute per inch or well within the township's prescribed minimum standard of 40 minutes per inch.

14. The township's expert, who was appellee's only witness on this point, further admitted that it is possible to meet the requirements of the Sanitary Code containing the usual accepted standards of percolation and cesspool construction on the 30,000-square foot located on this particular land.

15. The median price of a house in the first two sections of Hamilton Park is $25,000 to $26,000.

16. Immediately adjacent to the subject tract, land is currently being developed on smaller lots with lesser front foot requirements than in "A" zoning, viz. 35,-

000 square feet, so that the tract in question is surrounded on three sides by smaller lot developments, typically 30,000 to 35,000 square feet in area.

17. The tract is located a few hundred feet from the main arterial highway known as Bethlehem Pike or Route 309, which is built up with older residences and a variety of commercial establishments including gasoline stations, restaurants, a motel, garden markets, a wholesale meat and produce warehouse and an automobile agency; Merrill Hills and Hamilton Park are the only recent residential developments which touch the pike and all of these houses are on lots of 30,000 square feet.

18. The board of adjustment found it would be more economical for applicant to build on 30,000-square foot lots than 60,000 square foot lots: Finding 11, supra. The uncontradicted evidence produced in this court shows that it would be impracticable to build on 60,000-square foot lots in the location involved because it would be impossible to sell houses built on such large lots.

### Discussion

The first question that should engage our attention is whether the board of adjustment had any jurisdiction to grant a variance in the within case. At the hearing on February 19, 1957, the chairman of the board of adjustment stated, and the evidence shows, that the application of appellant was for a variance to enable it to construct houses on lots containing 30,-000 square feet in a tract of seven acres of land.

In its return, the board of adjustment stated:

"It is rather unusual for an applicant to come before the Zoning Board requesting a variance for several acres of ground. However, the Zoning Board knows of no law which restricts their jurisdiction to grant

an exception or variance to a particular size tract of land if the requirements of the law concerning variances are met."

We must take issue with this statement for, on the contrary, we know of no law or decision which holds that a variance may be granted to a subdivided tract of land containing seven acres. We have examined many decisions in which variances have been granted or refused and they involve a single lot or a particular building or use. We have found none where the size of the tract of land involved was as much as seven acres.

In Baronoff v. Zoning Board of Adjustment, 385 Pa. 110 (1956), the land involved was 1.830 acres. Owner applied for a variance which was refused by the board of adjustment and lower court. On appeal, the Supreme Court did not discuss the variance, but reversed the lower court on the ground that the zoning ordinance was unconstitutional as applied to appellant's land.

In Garbev Zoning Case, 385 Pa. 328 (1956), the land involved was 13 acres. The Supreme Court did not consider the question of variance, but held the zoning ordinance unconstitutional as applied to appellant's land.

In Lukens v. Ridley Township Zoning Board, 367 Pa. 608, the Supreme Court in the opinion made some comments on the size of a lot for which a variance could be granted. The tract of land involved was 20 acres. The owner asked for variances as follows: 1.66 acres of their 20 known as tract 1; .29 acres of tract 3; .74 acres of tract 4; .28 acres of tract 5; and 16 acres of tract 2. The Supreme Court held that variances could be granted for all of the above described tracts except the 16 acres which was not the proper

subject for a variance because it was really an application for a rezoning.

In Home Life Insurance Co. of America v. Lower Merion Township, no. 24, November term, 1956, this court held without citing authority: "The Board of Adjustment could not grant a variance covering 19 acres of land." That case, however, was decided on questions of procedure.

We hold, therefor, that the board of adjustment had no authority to grant a variance for nine lots in a subdivision consisting of seven acres.

The logic of the above holding is persuasive. If the board of adjustment can grant a variance for nine lots, it could grant a variance for 20 lots or 100 lots. This would be rezoning under the guise of a variance, an infringement on the rights of the legislative branch of the municipal government.

Appellants, however, challenge the amended ordinance on the ground of constitutionality. They have brought this question before the court in the proper manner: Knup v. Philadelphia, 386 Pa. 350 (1956).

Appellants contend that the Zoning Ordinance of 1941, as amended, which requires for residential purposes in this particular area a minimum lot area of 60,000 square feet, is unconstitutional because it has no reasonable relation to health, safety or morals, but on the contrary is so unreasonable as to be confiscatory in its application to appellants' seven acres of land. The relevant portion of the amended ordinance reads:

"b. Where a building or structure is to be erected, altered or used upon a lot which prior to its occupancy or use will be serviced by either public water and public sewer facilities, a lot area of not less than 60,000 square feet per family, or per building, in the case of uses other than single family detached dwellings, shall be required, provided that in the case of a lot held in

single and separate ownership at the effective date of this Ordinance (Ordinance No. 24), having an area of less than 60,000 square feet, a building may be erected thereon when authorized as a special exception."

Prior to July 1, 1956, when the amended ordinance was passed, appellants' property, together with other contiguous tracts, were in an "A" residential district and the lot area was fixed at not less than 30,000 square feet. Under this ordinance, appellants developed Hamilton Park, containing approximately 70 acres which have been subdivided into lots having a minimum area of 30,000 square feet. To the north of Hamilton Park is another development, Merrill Hills, which has been built up with attractive homes on lots containing 30,000 square feet. To the southwest of the subject property is another smaller development on which houses are being built on 30,000 square foot lots.

A public water supply is available to this seven-acre tract, but there are no public sewers and each house must have its own sanitary disposal system.

The amended ordinance requires a minimum lot area of 60,000 square feet, or nearly one and one-half acres. In our opinion a lot this size has no reasonable relation to the public safety or morals in that locality. In fact, as we understand the position of the township, it does not contend that a 60,000-square foot lot has any reasonable relationship to the public safety or morals, but rests its case on the contention that a lot area of 60,000 square feet is necessary for the public health because the sanitary drainage must be into septic tanks or cesspools and the nature of the soil is such that it requires a lot of 60,000 square feet to absorb the sewage. In a lot of lesser area overflowing cesspools with their menace to public health would result, so contends the township.

The evidence does not support this contention. It is undisputed that the houses built and occupied in Hamilton Park have had no drainage trouble and in adjoining Merrill Hills there was no relevant evidence of any drainage difficulties. It is true that for from four to eight feet below the surface, the soil of the seven acres is underlaid with clay with little or no porosity. When, however, you get through this layer of clay material, a high degree of porosity is struck.

The two civil engineers, called by appellants, testified that they had sunk test holes through the layer of clay and that the porosity of the material below the clay more than met the requirements of the sanitary ordinance of the township. The expert called by the township admitted that successful septic tanks could be established on lots of 30,000 square feet, but that the danger of overflow was greater than if the lot contained 60,000 square feet.

We could cite many cases in which our appellate courts have held that a zoning regulation which has no reasonable relationship to the public health, safety, morals or welfare is unconstitutional.

These cases are summed up in a late pronouncement by the Supreme Court. We refer to the case of Bilbar Construction Company v. Board of Adjustment of Easttown Township, numbers 3 and 6, January term, 1956, decided June 28, 1957, and not yet reported. In that case, the facts were very similar to the facts of the case at bar and the court held that a regulation requiring a lot area of one acre, in the particular residence district there involved, was so unreasonable as to be unconstitutional.█

We do not hold that the amended ordinance requiring a minimum lot area of 60,000 square feet in an "A" residential district is totally unconstitutional but we do hold that as to the seven acres involved in this case the ordinance requiring a minimum lot area of 60,000 square feet is unconstitutional and invalid.

### Conclusions of Law

1. The application of the zoning ordinance requiring a minimum lot area of 60,000 square feet to appellants' seven acres of land is confiscatory and discriminatory and bears no reasonable relation to the public health safety, morals or general welfare.

2. The amending ordinance requiring 60,000 square feet is invalid and unconstitutional as applied to appellants' land, namely the seven acres involved in this case.

3. The board of adjustment was without jurisdiction to grant or refuse a variance for appellants' seven acres of land.

### Decree

And now, October 7, 1957, paragraph B of section 303 of the Zoning Ordinance of Lower Gwynedd Township, requiring a lot area of not less than 60,000 square feet per family or for building, is hereby declared unconstitutional and invalid as applied to appellants' seven acres of land described in this proceeding. The action of the board of adjustment in affirming the action of the building inspector in refusing to issue a building permit for a lot less than 60,000 square feet, namely containing 30,000 square feet, is hereby revoked and the building inspector is authorized and directed to issue a permit for building a dwelling house on a lot of 30,000 square feet or more, provided that the building in other respects complies with the Zoning Ordinance of Lower Gwynedd Township.